(C. D. 1525)

MATTOON & Co., INC., A/C PHILIP SENEGRAM CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 20, 1953)

*Philip Stein (Marjorie M. Shostak* of counsel); *Jordan & Klingaman (Edward F. Jordan* and *Jacob L. Klingaman* of counsel), associate counsel; for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*Harold L. Grossman, Daniel I. Auster, Joseph E. Weil, Arthur R. Martoccia,* and *Dorothy C. Bennett,* special attorneys), for the defendant.

Before OLIVER, MOLLISON, and EKWALL, Judges; OLIVER, C. J., dissenting

MOLLISON, Judge: Two types of merchandise are covered by this protest. The first, described on the invoice as "New Pastel Worsted Noodles," and hereinafter referred to as "noodles," is represented by defendant's exhibit 1. The second, described on the invoice as "New Worsted Sweater Clips," and hereinafter referred to as "clips," is

represented by defendant's exhibit 2. Both types of merchandise were classified by the collector as "wool rags" under the *eo nomine* provision therefor in paragraph 1105 (a) of the Tariff Act of 1930, as amended by the trade agreement with the United Kingdom, reported in T. D. 49753, and assessed with duty at the rate of 9 cents per pound.

The protest claim is for duty at the rate of 7½ per centum ad valorem under the provision in paragraph 1555 of the same act, as amended by the said trade agreement, for "Waste, not specially provided for."

Preliminary to a discussion of the merits of the case, we find pending and undisposed of, a motion made by counsel for the plaintiff to strike out the deposition of defendant's witness Eisenberg—

\* \* \* on the ground that the witness failed to produce the documents when he said he was producing them, and, therefore, it is not responsive to the interrogatories as propounded. (Tr. p. 160.)

The background of the motion is as follows: The deposition was based upon interrogatories and cross-interrogatories propounded to the witness. Cross-interrogatories 7, 9, 37, and 38 called for the production of documents. As to Nos. 7 and 9, the witness said that he would "be glad to produce these invoices" (Tr. pp. 138 and 139), but apparently did not do so. As to No. 37, he said he would "produce these invoices," but apparently did not do so (Tr. p. 157). As to No. 38, he said it "is physically impossible to produce invoices from—for all these years" (Tr. p. 157).

No motion to strike each answer was made on the ground of failure to produce the documents at the time each question and answer was read into the record, but the foregoing motion was made at the conclusion of reading all of the questions and answers into the record, and ruling thereon was reserved. We are of the opinion that if the motion was directed against the entire deposition it was improper, and if it was directed against the answers to the particular cross-interrogatories which called for the production of documents, it was untimely and should have been made at the time the particular cross-interrogatories and answers were read into the record. The motion to strike is therefore denied.

On the merits of the case, the real dispute between the parties is as to whether the merchandise at bar is "rags" within the meaning of that term as used in paragraph 1105 (a) and the British Trade Agreement modification thereof. There is no real conflict between the parties as to the composition, origin, or use of the merchandise.

Both parties are in agreement that there is no question of commercial designation involved in the case—in other words, both parties are in agreement that the common and commercial meaning of the term "rags" as used in the statute is the same.

Common meaning of statutory terms being a question of law for the court to determine, the testimonial and documentary evidence offered at the trial bearing on the common meaning is advisory only, and not binding on the court.

The record shows that the merchandise in question is a byproduct resulting from the processes used in the manufacture of worsted or wool sweaters. Apparently, in such manufacture, knitted worsted or wool fabric or material is first cut to pattern and then sewn to form the garment. The noodles are very narrow pieces or strips which are the "offal" of the trimming of the garment upon manufacture. They show evidence of having been cut along seams or joinings of material. The clips are irregularly sized pieces which come from the cutting tables where the sweater material is cut to pattern.

Both types of material are, after importation, subjected to processes which convert it into shoddy, which is ultimately used in the woolen industry for remanufacture into yarn, which, in turn, may be used in the manufacture of cloth or other fabrics.

Plaintiff's sole witness was Nathan Brounstein, manager ·of the importing company, which deals in wastes and rags, who testified that the merchandise at bar was not usable as a rag and gave the reason for that statement as follows:

First of all, the·clips are of a much smaller size. The noodles are much smaller than even the clip. A rag in our line of business is considered an old worn out garment or pieces of cloth that come from a worn out garment which has been discarded for any use—for any further use than for what its original intent was for. (Tr. pp. 8–9.)

Opposed to this testimony, defendant offered the testimony of three qualified witnesses, all with many years' experience in dealing in and handling waste materials. Their testimony is to the effect that the term "wool rags" is a collective term covering a wide variety of waste materials, embracing cuttings obtained from new garments as well as discarded pieces from old and used articles, and that the two items here involved are included within the general term "wool rags."

This is not the first case in which the common meaning of the term "wool rags" was involved. The common meaning of that term has been the subject of judicial decision over a considerable period of years.

In the case of *United States* v. *Pearson & Emmott*, 131 Fed. Rep. 571 (1904), it was held by Circuit Judge Townsend, Circuit. Court, Southern District of New York, that portions of woolen material clipped from the piece in the course of making up garments "are 'rags' in the dictionary and popular signification, and are commercially designated and dealt in as rags by rag dealers" and were held to be specifically provided for as "woolen rags" in paragraph 363 of

the Tariff Act of 1897. This decision was affirmed without opinion by the Circuit Court of Appeals in 137 Fed. Rep. 1021.

In *United States* v. *Castle & Overton, Inc.*, 18 C. C. P. A. (Customs) 21, T. D. 43976 (1930), the Court of Customs and Patent Appeals said:

> The term "woolen rags" in paragraph 1105 [of the Tariff Act of 1922] clearly includes all woolen rags, old and new.

In *E. A. Stone & Co.* v. *United States*, 19 C. C. P. A.. (Customs) 234, T. D. 45338 (1931), the same court, after considering the legislative history of the term "woolen rags" in paragraph 1105 of the Tariff Act of 1922, said:

> From what has been said it is obvious .that the Congress intended to include within the term "woolen rags," contained in paragraph 1105, *supra*, both old and new woolen rags, and to include all such as were not more specifically provided for elsewhere in the act.

*People on Complaint of Meltzer* v. *Sobel*, 104 N. Y. S. 2d 162 (1950), held that when the defendant bought virgin woolen clippings from clothing manufacturers and resold the clippings, he was dealing in "rags" and was, therefore, required to have a junk dealer's license. This decision by a magistrate of the City of New York cites the *Pearson & Emmott* case, *supra*, as well as *Tenement House Department of the City of New York* v. *Hutkoff* (Mun. Ct., N. Y., 1914), 149 N. Y. S. 457, wherein it was said:

> The fact that these pieces of cloth were new does not take them out of the character of rags. It is not necessary that a fragment of cloth be old and dirty to make it a rag. Within the definition it may be a formless piece of fabric, whether old or new. * * *

Also cited is the decision of the New York Court of Appeals in *People* v. *American Wool Stock Corp.*, 286 N. Y. 77 (1941), wherein it was held that persons engaged in the business of buying and selling waste materials, of which 25 to 60 per centum were "new wool 'clips' " and 75 to 40 per centum were " 'old' woolen materials," were "junk dealers" within the meaning of a provision that any person engaged in the business of buying or selling "rags" is a "junk dealer."

*Contra*, see *People on the Complaint of Meltzer* v. *Nierman*, 71 N. Y. S. 2d 598 (1947), wherein a magistrate of the City of New York held (quoting from the syllabus):

> New wool clips are not "rags" within the meaning of statute defining a junk dealer as a person engaged in the business of purchasing or selling "rags," among other things.

From a reading of the opinion in the latter case, it is clear that the decision was arrived at on the basis of the intent of the legislators in enacting special regulatory legislation under the police power, rather than upon the basis of an objective determination of the nature of

"rags," *per se*. Moreover, as is apparent from the preceding citations, the decision is contrary to the prevailing judicial opinion on the subject not only in the jurisdiction where rendered, but also elsewhere, including the jurisdiction in customs matters.

We are therefore of the opinion that the common meaning of the term here in issue, viz, "wool rags," includes what have been termed "new" wool rags, and includes waste fragments or pieces of cloth produced in the process of making up garments.

Tested by the foregoing, the "noodles" and "clips" at bar are "wool rags." The "clips" are formless or irregular pieces of knitted cloth resulting from the process of making sweaters. The "noodles" are stringy, or comparatively long, narrow pieces of knitted fabric clipped or cut at a seam or joining of a sweater or other knitted article. As represented by exhibits 1 and 2, both the "noodles" and the "clips" are pieces of woven fabric or cloth, as distinguished from mere threads or yarns.

Plaintiff's witness Brounstein spoke of the element of size in his concept of a "rag," by stating that the "clips" and "noodles" were of "much smaller size" than a rag. This matter was not developed, however, and we do not find the statement to be supported elsewhere. On the contrary, the dictionary definitions speak of "fragment," "bit," "shred," and "scrap," as applied to rags, giving the idea of smallness, or even minuteness in size. It seems to us that both the "noodles" and the "clips" respond to the terms "fragment," "bit," "shred," and "scrap." In this they differ from the discarded paper-mill felts, as much as 75 feet in length, which were held, because of their size and dimensions, not to respond to the common meaning of the term "rag" in *P. Silverman & Son v. United States*, 32 C. C. P. A. (Customs) 99, C. A. D. 292.

In the brief filed on behalf of the plaintiff, there is cited, and excerpts are quoted from, the case of *United States v. Maurice Lobsitz*, 35 C. C. P. A. (Customs) 146, C. A. D. 386. Counsel for the plaintiff urges that the factual situation presented in that case is the same in all material respects as that in the present case. We do not find this to be so.

The merchandise involved in the *Lobsitz* case consisted of fragments of woolen material left after pieces had been stamped, punched, or cut from bolts of felted cloth for use as gaskets, washers, and the like. In composition, origin, and use, the merchandise there involved was different from the merchandise here in question.

That case was decided in this court (*Maurice Lobsitz v. United States*, 17 Cust. Ct. 191, Abstract 51341) upon two questions of fact: First, whether or not the merchandise actually consisted of "rags," and, second, whether or not the merchandise involved came in competition with wool. On the first question, in contradistinction to the

record here made, it appeared that no witness for the plaintiff or the defendant identified the merchandise as "rags," and this court found that upon the record made, the merchandise was, in fact, wool waste and not wool rags.

On the second question, this court found that the extremely short length of the fibers made the material wholly unsuitable for spinning purposes and that, consequently, it did not compete with the woolen industry.

On appeal, our appellate court held that there was substantial evidence to support each of the findings of fact made by this court, and, following the well-established practice in appellate courts in such situation, declined to reverse the findings. On the legal question involved, the court adhered to the principle of law stated in its decision in the cases of *P. Silverman & Son* v. *United States*, 27 C. C. P. A. (Customs) 324, C. A. D. 107, and *P. Silverman & Son* v. *United States*, 32 C. C. P. A. (Customs) 99, C. A. D. 292, viz, that the wool waste provision in paragraph 1105 of the Tariff Act of 1930 embraces only those wastes of wool which influence and affect the sale and use of wool.

In its decision, the appellate court expressly refrained from making any ruling on the question of whether the wool rags provided for in paragraph 1105, *supra*, were only such as influence and affect the sale of wool, i. e., such as are used in the manufacture of shoddy or are suitable for spinning purposes. It is to be noted, however, that the rags here in issue, as distinguished from the material involved in the *Lobsitz* case, are used in the manufacture of shoddy, which is used in the wool industry, and, hence if the wool rags covered by paragraph 1105, *supra*, are limited to such as influence and affect the sale of wool, the rags here in issue meet that requirement.

We are satisfied that the wool material here involved consists of rags within the common meaning of that term, and, moreover, that it consists of such wool rags as are within the purview of paragraph 1105, *supra*. The provision for "wool rags," being an *eo nomine* provision, takes precedence over the more general provision for "Waste, not specially provided for" under which plaintiff claims.

Judgment will therefore issue overruling the protest claim.

DISSENTING OPINION

OLIVER, Chief Judge: I respectfully dissent from the conclusion reached by my colleagues, holding that the merchandise in question "consists of rags within the common meaning of that term, and, moreover, that it consists of such wool rags as are within the purview of paragraph 1105, *supra*."

Much of the majority opinion is directed toward emphasizing that the statutory term, "wool rags," includes new rags as well as old. While I recognize that well-settled judicial interpretation of the tariff

provision under consideration, I do not agree with the majority opinion in applying certain cases, to which I shall now make brief reference. The case of *United States* v. *Pearson & Emmott*, 131 Fed. Rep. 571 (1904), as an examination of the record therein discloses, was based on the principle of commercial designation. Although that case was presented under the Tariff Act of 1897, the decision therein has never been cited in any case covering customs litigation. The case is not acceptable as an authority herein. Other cases cited in the majority opinion are completely disassociated with customs matters and have no bearing on the question before us. *People on Complaint of Meltzer* v. *Sobel*, 104 N. Y. S. 2d 162 (1950); *Tenement House Department of the City of New York* v. *Hutkoff* (Mun. Ct., N. Y., 1914), 149 N. Y. S. 457; *People* v. *American Wool Stock Corp.*, 286 N. Y. 77 (1941); and *People on the Complaint of Meltzer* v. *Nierman*, 71 N. Y. S. 2d 598 (1947). All of those cases involved statutes and invoked jurisdictions wholly unrelated to tariff problems. They offer no support toward a proper determination of the present issue.

The present merchandise is acquired during the course of manufacturing sweaters. The so-called "noodles" (defendant's exhibit 1) result from operations in the sewing department where the different parts of a sweater are stitched together. The "cutters" or "cuttings" (defendant's exhibit 2) are the waste from cutting tables where the sweaters are cut to pattern. Plaintiff's witness, manager of the importing company, identified all of the merchandise as "offal," a characterization that aptly describes the items under consideration. The "noodles" are extremely narrow strips, largely resembling pieces of string. The "cutters" or "cuttings" consist of small irregular pieces varying in dimensions as well as narrow strips like the "noodles" (exhibit 1). The entire collection is refuse that is allowed to fall off in the manufacture of sweaters. Neither in appearance nor in general character is the present merchandise suggestive of a "rag," defined in Funk & Wagnalls New Standard Dictionary as "A fragment of cloth torn or partly torn from its original connection; especially, a worn, frayed, or torn bit of a garment; hence, figuratively, a fragment, small amount, or semblance of anything; as, linen *rags*." [Italics quoted.] (See also *Train-Smith Co.* v. *United States*, 140 Fed. Rep. 113, and *Shallus* v. *United States*, 2 Ct. Cust. Appls. 456, T. D. 32205.) All of the merchandise in question is waste, concededly composed of wool, and ultimately reduced to shoddy.

The imported merchandise is not "wool waste," *P. Silverman & Son* v. *United States*, 32 C. C. P. A. (Customs) 99, C. A. D. 292. In that case, the merchandise consisted of "old paper-mill felts," discarded from the paper-making industry, and which had outlived their usefulness in the manufacture of paper and were without any commercial value except for the recovery of their component wool

fibers that were processed into shoddy. In excluding the merchandise from the provision for all other wool wastes, not specially provided for, in paragraph 1105, as amended by T. D. 49753, the court held, in effect, that the said provision was confined to wastes produced in woolen-manufacturing operations prior to the weaving process. Under that statutory construction, the items in question are removed from classification within that provision. Since the present merchandise is waste, and not being otherwise provided for, it is classifiable under the residuary provision for "Waste, not specially provided for," in paragraph 1555, as amended by T. D. 49753, and dutiable thereunder at the rate of 7½ per centum ad valorem.

This conclusion is consistent with the holding in the case of *Maurice Lobsitz* v. *United States*, 17 Cust. Ct. 191, Abstract 51341, affirmed in *United States* v. *Maurice Lobsitz*, 35 C. C. P. A. (Customs) 146, C. A. D. 386. There, as here, the competing provisions were "wool rags," the classification adopted by the collector, and "Waste, not specially provided for," the claim alleged by the importer. The merchandise consisted of strips of white wool felt, remaining from large sheets or rolls used in the manufacture of gaskets, washers, and other felt articles. There was testimony to the effect that the merchandise was a felt clipping or felt cutting or felt scrap. After considering the common meaning of the word "rag," in conjunction with the character of the merchandise there under consideration, the classification as "Waste, not specially provided for" was held to be controlling, the same as I find to be applicable to the present merchandise.

Plaintiff's claim should be sustained.