**No. 59106.**—J. Eisenberg, Inc. *v.* United States, protests 223866–K and 229833–K (New York).

WILSON, Judge: The merchandise in this case, consisting of waste pieces of knitted wool fabric, was classified as wool rags under paragraph 1105 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, dutiable at 9 cents per pound.

Plaintiff claims the merchandise is "Waste, not specially provided for," which falls under paragraph 1555 of the said act and dutiable, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, at 4 per centum ad valorem.

The case was submitted on a stipulation between counsel for the respective parties, the pertinent provisions of which read as follows:

2– That the merchandise included in the invoice covered by Protest No. 223866–K/11409–53, consists of waste pieces of knitted wool fabric, known as "clips," the same in all material respects as the merchandise represented by defendant's exhibit 2 in *Mattoon & Co., Inc., (a/c Philip Senegram Co.) v. United States*, Suit No. 4782, C. A. D. 563.

3– That the merchandise included in the invoice covered by Protest No. 229833–K/17905–53, consists of waste pieces of knitted wool fabric, known as "seamers" or "noodles," the same in all material respects as the merchandise represented by defendant's exhibit 1 in the said C. A. D. 563.

4– That the record in the said C. A. D. 563 may be incorporated in the record in the protests herein.

5– That the involved merchandise, referred to in paragraphs 2 and 3 above, after importation, is used chiefly in the woolen industry for remanufacture into yarn and ultimately cloth; and that to prepare it for such use it must be subjected to a picking or shredding process, and is usually subjected to a garnetting process, to convert it into wool shoddy, a fibrous mass.

6– That wool thread or yarn waste is obtained as a waste during the spinning or other processes employed in the manufacture of thread or yarn, prior to weaving, knitting or other fabricating processes, and is used chiefly in the remanufacture of thread or yarn; and that, as the fibers in said thread or yarn waste are twisted, it must be garnetted to prepare it for such use.

The collector's classification of the merchandise in the *Mattoon* case, *supra* (42 C. C. P. A. (Customs) 19, C. A. D. 563), as "wool rags," under paragraph 1105 (a) of the Tariff Act of 1930, as amended, and the importer's claimed classification therein as "Waste, not specially provided for," under paragraph 1555 of the said act, as amended, were the same as in the case at bar. Accordingly, the issue here presented is the same as that in the incorporated case.

The nature and source of the subject matter in controversy were described in the decision of this court (*Mattoon & Co., Inc., a/c Philip Senegram Co.* v. *United States*, 30 Cust. Ct. 228, C. D. 1525) as follows:

The record shows that the merchandise in question is a byproduct resulting from the processes used in the manufacture of worsted or wool sweaters. Apparently, in such manufacture, knitted worsted or wool fabric or material is first cut to pattern and then sewn to form the garment. The noodles are very narrow pieces or strips which are the "offal" of the trimming of the garment upon manufacture. They show evidence of having been cut along seams or joinings of material. The clips are irregularly sized pieces which come from the cutting tables where the sweater material is cut to pattern.

Both types of material are, after importation, subjected to processes which convert it into shoddy, which is ultimately used in the woolen industry for remanufacture into yarn, which, in turn, may be used in the manufacture of cloth or other fabrics.

In the incorporated case, plaintiff's sole witness was the manager of the importing firm, a dealer in wastes and rags. He testified that the merchandise there under consideration was not usable as a rag, giving the following reason for his conclusion:

First of all, the clips are of a much smaller size. The noodles are much smaller than even the clip. A rag in our line of business is considered an old worn out garment or pieces of cloth that come from a worn out garment which has been discarded for any use—for any further use than for what its original intent was for. * * *

The Government, in the incorporated case, introduced the testimony of three well-qualified witnesses, all with many years' experience in handling and dealing in waste materials. In support of a conclusion opposite to that expressed by plaintiff's witness, the testimony of defendant's witnesses was to the effect that the phrase "wool rags" is a collective term covering a wide variety of waste materials, embracing cuttings obtained from new garments as well as discarded pieces from old and used articles. Using such a definition, defendant's witnesses were of the opinion that the merchandise involved in the incorporated case was included within the general term "wool rags."

The decision of this court in the *Mattoon* case, *supra*, one judge dissenting, overruled plaintiff's protest and affirmed the classification of the involved merchandise as "wool rags" under paragraph 1105 (a) of the tariff act, as amended. The judgment of the lower court was, however, reversed on appeal (*Mattoon &*

*Co., Inc., (a/c Philip Senegram Co.)* v. *United States,* 42 C. C. P. A. (Customs) 19, C. A. D. 563).

In its opinion, the appellate court stated:

The issue here does not, however, concern the facts of the case but resides in the point of law which those facts establish. The majority observed that the common meaning of the term "wool rags" had been the subject of judicial decisions over a period of years, and, after reviewing the holdings of a group of cited cases, arrived at a basic and controlling conclusion to the effect that the term—

"wool rags" involves what have been termed "new" wool rags, and includes waste fragments or pieces of cloth produced in the process of making up garments.

Appellant admits that a ragged or tattered piece of cloth torn from a new garment or new bolt of cloth is just as much a rag as is a piece of cloth so detached from an old piece of cloth or an old garment.

Appellant also points out that it made no contention in the lower court, nor does it contend here, that because the involved merchandise consists of pieces of new cloth, rather than old, such merchandise is not "rags," as that term is commonly understood. The import of appellant's argument is that the authorities relied upon the Government, as well as the trial court, have no application to the facts in the instant case and that the decision in *United States* v. *Maurice Lobsitz,* 35 C. C. P. A. (Customs) 146, C. A. D. 386, is controlling of the situation presented by the record.

Discussing the position taken by the majority in the lower court in the *Mattoon* case, *supra,* the appellate court made reference to the following finding in the dissenting opinion therein:

* * * Since the present merchandise is waste, and not being otherwise provided for, it is classifiable under the residuary provision for "Waste, not specially provided for," in paragraph 1555 * * * and dutiable thereunder at the rate of 7½ per centum ad valorem.

This conclusion is consistent with the holding in the case of *Maurice Lobsitz* v. *United States,* 17 Cust. Ct. 191, Abstract 51341, affirmed in *United States* v. *Maurice Lobsitz,* 35 C. C. P. A. (Customs) 146, C. A. D. 386. There, as here, the competing provisions were "wool rags, the classification adopted by the collector, and "Waste, not specially provided for," the claim alleged by the importer. The merchandise consisted of strips of white wool felt, remaining from large sheets or rolls used in the manufacture of gaskets, washers, and other felt articles. There was testimony to the effect that the merchandise was a felt clipping or felt cutting or felt scrap. After considering the common meaning of the word "rag," in conjunction with the character of the merchandise there under consideration, the classification as "Waste, not specially provided for" was held to be controlling, the same as I find to be applicable to the present merchandise.

The appellate court in the *Mattoon* case, *supra,* then concluded:

The majority in its decision properly noted that the merchandise in the *Lobsitz* case was different in composition, origin and use from the present merchandise because in the instant case the pieces were cut from knitted cloth while the clippings and cuttings in the *Lobsitz* case had been stamped, punched, or cut from bolts of felted cloth.

Despite the distinction hereinbefore described and other minor distinctions, the fact remains that in *Lobsitz,* as in the case at bar, the imported merchandise consisted of scrap or *waste pieces of wool cloth derived from a necessary cutting step in a manufacturing process;* that the merchandise in neither case was bought or sold under the designation "rags"; nor was a commercial meaning in either case established different from the common meaning of the term "rags," although witnesses in both cases testified as to their understanding of the common meaning of that term.

A careful analysis of the cited authorities leads us to agree with the finding expressed by Chief Judge Oliver in his dissenting opinion, and for that reason the judgment of the United States Customs Court is *reversed.* [Italics supplied.]

The case at bar presents nothing new, either factually or in a legal way, from the questions discussed and passed upon by our appellate court in the incorporated case, *Mattoon & Co., Inc., (a/c Philip Senegram Co.)* v. *United States,* 42 C. C. P. A. (Customs) 19, C. A. D. 563, so that the decision reached therein is for us *stare decisis* of the issues presented herein. We, therefore, adhere to the reasoning followed and the conclusions reached in the said incorporated case and hold the involved merchandise properly dutiable under paragraph 1555 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, at the rate of 4 per centum ad valorem, as "Waste, not specially provided for," as claimed.

The protests are sustained. Judgment will be rendered accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I am unable to concur in the decision and judgment of my colleagues in this case. In my view the facts establish that the merchandise is "wool rags" under the common meaning of that term and as it has been judicially defined. Undeniably, it is also a waste in the common sense of that term, inasmuch as wool rags are a form of waste. It may also be a wool waste within the meaning of that term as it appears in the tariff act, but in the view I take of the matter it is unnecessary to decide that question.

Under no circumstances, could the holding of the *Lobsitz* case (35 C. C. P. A. (Customs) 146, C. A. D. 386) be applicable to the facts herein unless it were first determined that the merchandise at bar is not wool rags. To my mind, the evidence on that point in this case, and the law applicable thereto, require a finding that the merchandise is wool rags. I have read the decision of our appellate court in the incorporated case and do not find that it was there directly held that merchandise, such as that here involved, is not "wool rags."

This is not a case where it can be said that if the merchandise is "waste" it cannot be "wool rags," that is to say, where one term necessarily excludes the other. Webster's New International Dictionary, as pointed out by the appellate court in its decision in the incorporated case, defines "rag" as "A *waste* piece of cloth torn or cut off * * * ." [Italics mine.] In my opinion, the merchandise is both "wool rags" and "waste" and may also be "wool waste." In the competition between the three provisions, the doctrine of relative specificity requires classification under the provision for wool rags as being the narrowest description of the type of waste involved.

Being of this view, I must respectfully dissent.