(C. D. 1865)

J. EISENBERG, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 28, 1957)

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The protest in this case was submitted on a stipulation entered into between counsel for the respective parties, the pertinent parts of which read:

1– That the merchandise described on the invoices covered by the protest herein as "Overlocks" or "Seam," and assessed for duty at 9 cents per pound under paragraph 1105, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, consists of waste pieces of knitted wool fabric, the same in all material respects as the merchandise known as "seamers" or "noodles" the subject of *United States* v. *J. Eisenberg, Inc.* (Suit 4849), C. A. D. 616.

2– That all other merchandise on the said invoices assessed for duty at 9 cents per pound under the said paragraph 1105, consists of waste pieces of knitted wool fabric the same in all material respects as the merchandise known as "clips" the subject of the said C. A. D. 616.

3– That the record in the said C. A. D. 616 may be incorporated in the record in the protest herein.

The involved merchandise, consisting of waste pieces of knitted wool fabric, was assessed for duty, as heretofore indicated, at 9 cents per pound under paragraph 1105 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, under the provision therein for "Wool rags." The protest claims the merchandise properly classifiable under paragraph 1555 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, at the rate of 4 per centum ad valorem under the provision for "Waste, not specially provided for."

The issue in this case, as stated by counsel for the plaintiff herein and as accepted by counsel for the defendant, is as follows:

Are waste pieces of knitted wool fabric, derived from a necessary cutting step in a manufacturing process, "rags" within the common or ordinary meaning of that term.

This is the third case in which the question involving classification of merchandise such as that here imported has been presented to this court. We deem it pertinent at this juncture to set forth the history of litigation on this matter. In the first case, *Mattoon & Co., Inc., a/c Philip Senegram Co.* v. *United States*, 30 Cust. Ct. 228, C. D. 1525, this court, one judge dissenting, held merchandise, conceded to be the same in all material respects as that in the case at bar, properly classifiable under paragraph 1105 (a) of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, at the rate of 9 cents per pound as "wool rags," as classified. In a dissenting opinion therein, Chief Judge Oliver, on the authority of *United States* v. *Maurice Lobsitz*, 35 C. C. P. A. (Customs) 146, C. A. D. 386 (which case affirmed the holding of this court in *Maurice Lobsitz* v. *United States*, 17 Cust. Ct. 191, Abstract 51341), held that the merchandise in the *Mattoon & Co., Inc.*, case, *supra*, did not consist of rags within the common meaning of that term, and, moreover, that it did not consist of such wool rags as are within the purview of paragraph 1105, *supra*, but held that the involved merchandise was properly classifiable under the residuary provision for "Waste, not specially provided for," in paragraph 1555, as amended by T. D. 49753, *supra*, and dutiable thereunder at the rate of 7½ per centum ad valorem. The merchandise in the *Lobsitz* case (C. A. D. 386), *supra*, consisted of pieces or strips of white wool felt, which were cuttings in a manufacturing process from a bolt or large sheet of material, the testimony indicating that they were used in the manufacture of "gaskets, washers, and other types of utensils of felt." Our appellate court therein held the involved merchandise not to be "rags," and, as heretofore stated, affirmed the decision of the trial court.

The decision of this court in the *Mattoon & Co., Inc.*, case, *supra* (C. D. 1525), was reversed by our appellate court in *Mattoon & Co., Inc., (a/c Philip Senegram Co.)* v. *United States*, 42 C. C. P. A. (Customs) 19, C. A. D. 563. In its decision, our appellate court stated, *inter alia* (pp. 22, 23):

Despite the distinction hereinbefore described and other minor distinctions, the fact remains that in *Lobsitz*, as in the case at bar, the imported merchandise consisted of scrap or waste pieces of wool cloth derived from a necessary cutting step in a manufacturing process; that the merchandise in neither case was bought or sold under the designation "rags"; nor was a commercial meaning in either case established different from the common meaning of the term "rags," although witnesses in both cases testified as to their understanding of the common meaning of that term.

In the second case presented on this subject matter, namely, *J. Eisenberg, Inc.* v. *United States*, 34 Cust. Ct. 391, Abstract 59106 (in which the record in the *Mattoon & Co., Inc.*, case, *supra*, was incorporated), this court, one judge dissenting, followed the decision of the appellate court in the *Mattoon & Co., Inc.*, case, *supra*, and held the involved merchandise not to be classifiable as wool "rags."

The merchandise involved in the *J. Eisenberg, Inc.*, case, *supra*, known as "noodles" and "clips," was, after importation, used chiefly in the woolen industry for remanufacture into yarn and, ultimately, cloth, and consisted, as does the merchandise now before us, of waste pieces of knitted wool fabric. In holding the merchandise dutiable, as claimed, the trial court, in its decision in the *J. Eisenberg, Inc.*, case, *supra*, page 394, stated, in part, as follows:

> The case at bar presents nothing new, either factually or in a legal way, from the questions discussed and passed upon by our appellate court in the incorporated case, *Mattoon & Co., Inc. (a/c Philip Senegram Co.)* v. *United States*, 42 C. C. P. A. (Customs) 19, C. A. D. 563, so that the decision reached therein is for us *stare decisis* of the issues presented herein. We, therefore, adhere to the reasoning followed and the conclusions reached in the said incorporated case and hold the involved merchandise properly dutiable under paragraph 1555 of the Tariff Act of 1930, * * * as "Waste, not specially provided for," as claimed.

On appeal, the decision of this court in the *J. Eisenberg, Inc.*, case, *supra*, was reversed by our appellate court, one judge dissenting, in *United States* v. *J. Eisenberg, Inc.* (suit No. 4849), 43 C. C. P. A. (Customs) 105, C. A. D. 616. The appellate court therein held the involved merchandise properly dutiable, as classified, under paragraph 1105 (a) of the Tariff Act of 1930, as modified, as wool rags. In determining the common meaning of the term "rag," the majority of the court noted the following definitions:

> Webster's New International Dictionary—1949
> Rag 1. a A waste piece of cloth torn or cut off; a tattered piece of cloth, a shred; tatter. * * *
> New Standard Dictionary—1916
> Rag, n. 1. A fragment of cloth torn or partly torn from its original connection; especially a worn, frayed, or torn bit of a garment; * * *
> A New English Dictionary on Historical Principles (Oxford Dictionary), 1914, Vol. VIII, Page 105—
> Rag. 1. A small worthless fragment or shred of some woven material; *esp.* one of the irregular scraps into which a piece of such material is reduced by wear and tear.
> Century Dictionary and Cyclopedia, 1911 Vol. VIII, page 4937—
> Rag. 4. A torn, worn or formless fragment or shred of cloth; a comparatively worthless piece of any textile fabric, either wholly or partly detached from its connection by violence or abrasion.

Thereafter, the majority observed:

> It is to be further noted that the stipulation in paragraph 5, *supra*, states that the imported merchandise is converted into shoddy, which is in turn used for manufacturing cloth. In that respect, it is to be observed that the Summary of Tariff Information advises that "Wool rags are usually reduced to the state of shoddy and the reclaimed wool fibers are largely used in woolen manufacture." It thus appears that the imported merchandise was the specific type of goods which the framers of the statute had in mind as "Wool rags," and to decide otherwise would be directly contrary to the intent of Congress.

> \*      \*      \*      \*      \*      \*      \*

Since the fragments here are rags, and since it has been stipulated that they consist of waste pieces of knitted wool and are used chiefly in the woolen industry for remanufacture into yarn and cloth, it is evident that their proper classification is as wool rags under paragraph 1105 (a), *supra.* * * *

The majority of the court, in the *J. Eisenberg, Inc.,* case, *supra* (C. A. D. 616), thereupon concluded:

For the reasons given, we conclude that the instant merchandise is properly classifiable as "wool rags" under paragraph 1105 (a), *supra.* Therefore, the decisions in the *Mattoon* and *Lobsitz* cases, *supra,* are hereby overruled so far as they are inconsistent with the instant decision. * * *

In his dissenting opinion in the incorporated *Eisenberg* case, *supra,* Judge Cole stated, in part, as follows:

* * * I wish to emphasize first that there is nothing before us in this case which has not been fully considered in the previous cases. The majority relies upon certain dictionary definitions (apparently to establish that the common meaning of the word "rags" includes the items involved here), and upon quotations from the Summary of Tariff Information, 1929 to establish that Congress intended to include such merchandise within the meaning of the word "rags." The same dictionary definitions relied upon by the majority here were before us in the *Lobsitz* and the *Mattoon* cases (cited in the majority opinion), and, in fact, they were quoted in the *Mattoon* case. Likewise, the quotation from the Summary of Tariff Information was fully argued in the briefs in both the *Mattoon* and *Lobsitz* cases.

Nor does the stipulation herein make this case any different than the *Mattoon* case since the stipulation merely reiterates what was established as fact in the *Mattoon* case, and indeed follows closely the terminology used in the decisions. For all practical purposes this case is merely a rehearing of the *Mattoon* case. We denied a petition for rehearing in that case. It is my opinion that since the facts presented in this case are exactly the same as in the *Mattoon* case, and since no new arguments have been developed, that the decision below should have been affirmed on that authority without opinion.

*       *       *       *       *       *       *

* * * I understood the *Mattoon* case, as well as the *Lobsitz* case (where felt "clips" were involved), to hold that the term "rags" was not used in a general sense in paragraph 1105 but in its common meaning, which excludes merchandise as insubstantial as that involved here. Such being the case, reference to the Summary of Tariff Information was not permissible.

*       *       *       *       *       *       *

To now resort to extrinsic evidence of congressional intent to contradict this court's interpretation of the common meaning of a tariff term—which evidence was carefully considered by our court in the past—is going to an extreme I cannot accept. * * *

In seeking a reconsideration of the question before us, counsel for the plaintiff herein argues that the decision of the majority in the incorporated *Eisenberg* case, *supra,* was in error for the following reasons:

I– In resorting to legislative history in the determination of the common meaning of the term "rags", the court acted *contra* to controlling decisions of the Supreme Court and to prior decisions of its own.

II– In departing from the common meaning of the term "rags" as determined by it in the *Lobsitz* and *Mattoon* cases, the court acted *contra* to a long line of prior decisions rendered by it.

The defendant, on the other hand, maintains that the majority of the court, in the incorporated *Eisenberg* case, *supra*, referred to the legislative history of paragraph 1105 (a), *supra*, not for the purpose of determining the meaning of the term "rag," but, rather, to ascertain whether or not the Congress, in using the term, intended to restrict it in any manner. Apparently, the majority of the court in its determination had this purpose in mind, stating, in this connection, as follows:

While the quoted definitions indicate that the word "rag" is commonly applied to a worn and torn piece of cloth, they are all broad enough to include pieces of new, as well as old, cloth. No contention is made that merely because the instant merchandise is new, it would be precluded classification as rags. It is urged, however, *inter alia*, that such merchandise is not dutiable as rags because the fragments were not obtained by tearing, but by a cutting operation which was part of a manufacturing process. A similar contention was sustained by this court in the *Mattoon* case, *supra*, and in *United States* v. *Maurice Lobsitz*, 35 C. C. P. A. (Customs) 146, C. A. D. 386.

\*     \*     \*     \*     \*     \*     \*

While the New Standard Dictionary does not expressly define a "rag" as being cut, we think such a process is contemplated by the language "torn or *partly* torn." (Italics ours.) In any event, the other definitions quoted are clearly broad enough to include cut fragments. \* \* \* So far as commercial use of fragments of cloth is concerned, it would seem to be immaterial whether they were separated from the original piece by tearing or cutting, and there is no reason to suppose that Congress, by the use of the word "rags," intended to make any distinction in that respect.

We are appreciative of the holdings of our appellate court in the *Lobsitz* and *Mattoon* cases, *supra*, to the effect that merchandise of the character, such as that at bar, is not classifiable under the provision in paragraph 1105 (a), as amended, *supra*, for "Wool rags" but that it is properly dutiable under paragraph 1555 of the Tariff Act of 1930, as amended, as "Waste, not specially provided for." However, in the determination of the classification of the merchandise at bar, we find ourselves constrained, in view of the latest expression of our appellate court in *United States* v. *J. Eisenberg, Inc.*, 43 C. C. P. A. (Customs) 105, C. A. D. 616, in passing upon the applicability for duty purposes of the involved paragraphs as to merchandise such as that here imported, to adhere to the holding of our appellate court in the incorporated case herein. Accordingly, we hold the imported merchandise properly dutiable at the rate of 9 cents per pound under paragraph 1105 (a) of the Tariff Act of 1930, as amended, *supra*, under the provision therein for "Wool rags," as classified. The protest claim herein is overruled. Judgment will be rendered accordingly.